# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JOSE C. BENITEZ, on behalf of himself and on behalf of all others similarly situated,**

    Plaintiff,

v.                              CASE NO: 8:21-cv-0221-KKM-TGW

**FGO DELIVERS, LLC d/b/a FGO LOGISTICS LLC**

    Defendant.

_____/

## UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Named Plaintiff, Jose C. Benitez (the "Named Plaintiff"), and FGO Delivers, LLC, d/b/a FGO Logistics LLC ("FGO" or "Defendant") (together, the "Parties"), hereby file this Joint Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law, seeking the Court's final approval of the Parties' class action settlement ("Settlement Agreement" or "Agreement") previously filed with the Court as an attachment to ECF No. 26.

The Court has already preliminarily approved the Parties' Settlement Agreement. (ECF No. 30). After the Court granted preliminary approval of the Parties' Class Action settlement, the settlement administrator mailed the approved notice to the 7,995 class members. The reaction by class members was overwhelmingly positive. To date zero class members objected and only a single

class member asked to be excluded. Practically speaking, little has changed since the Court issued the Order granting preliminary approval, confirming the Settlement is fair, reasonable, adequate, and warrants final approval. Thus, Plaintiff respectfully asks that the Court enter the proposed order attached hereto as Exhibit A. In further support thereof, Plaintiff states as follows:

## I. History of the Litigation.

On or about December 22, 2020, Named Plaintiff filed this class action lawsuit (the "FCRA Litigation") asserting claims against Defendant under the Fair Credit Reporting Act on behalf of himself and on behalf of a proposed class of similarly situated individuals. In the Complaint Plaintiff alleged that Defendant willfully violated the disclosure and authorization provisions of the Fair Credit Reporting Act ("FCRA") in 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) by obtaining consumer/background reports on Plaintiff and prospective applicants for employment without first disclosing to them in a separate disclosure solely containing the statutory language, and included additional language not permitted under the FCRA. Defendant has denied any liability and continues to do so.

This case has been extensively litigated since Defendant removed the Complaint from state to federal court. The undersigned filed this lawsuit in state court on December 22, 2020, asserting nationwide class claims against Defendant for violations of the FCRA. On January 28, 2021, Defendant filed its Notice of Removal pursuant to 28 U.S.C. § 1331. On February 16, 2021 Defendant filed its Answer and Affirmative Defenses. Discovery then commenced. Plaintiff's counsel

propounded interrogatories, requests for production, and sent out third-party discovery to the consumer reporting agency, Backgrounds Online, Defendant used to obtain the consumer reports at issue in this lawsuit. Then, after significant written discovery efforts by Plaintiff's counsel, the Parties mediated the case on a class basis. Mediation was held on August 17, 2021, before highly respected mediator, Carlos J. Burruezo. During mediation the Parties reached a potential class wide resolution that, if granted final approval by this Court, will resolve the claims of the Named Plaintiff of approximately 7,995 putative class members.

## II.     Mediation and the Settlement Agreement.

The Parties engaged in settlement negotiations prior to mediation. The Parties' efforts culminated in settlement of the class at mediation as defined by the Court, consisting of approximately 7,995 members. The Parties thereafter executed a Joint Stipulation of Class Settlement Agreement submitted to the Court at ECF No. 26-1 (the "Agreement"). The settlement class is defined as follows:

> Disclosure Form Settlement Class: All individuals who were the subject of a consumer report that was procured by FGO within two years prior to the filing of the complaint up to August 17, 2021.
>
> Pre-Adverse Action Notice Subclass: All individuals who were not approved by FGO to work based on information contained in a consumer report within two years prior to the filing of the complaint up to August 17, 2021.

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all members of the Settlement Classes who do not opt out of the settlement (the "Settlement Class Members") in exchange for Defendant's

3

agreement to fund a settlement common fund (the "Settlement Fund") in the amount of $430,000.00 (the "Settlement Payment"). Settlement Class Members do not have to submit claim forms to receive their share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after final approval. If settlement checks are not cashed and after all administrative costs and expenses have been recouped, the Settlement Agreement provides for a donation to a *cy pres* recipient. If the requested amounts are granted for attorneys' fees, administrative expenses, and a general release payment to the Named Plaintiff, the parties anticipate that each Disclosure Form Settlement Class Member is entitled to a net payment of approximately $31.14. Individuals who are members of only the Disclosure Form Settlement Class will receive a single pro rata share. Individuals who are members of both classes will receive a double pro rata share.

The Settlement Agreement also provides that Class Counsel's fees and a general release payment to the Named Plaintiff are to come out of the Settlement Fund, subject to the Court's approval. Counsel is authorized to file an unopposed petition for up to one third of the fund as attorneys' fees, plus costs. Jose Benitez, the Named Plaintiff, shall, in addition to the payment provided to him as a Settlement Class Member, be entitled to an additional payment of up to $7,500.00 for his execution of a broad, general release that is more sweeping than the release applicable to Class Members. Neither settlement approval nor the size of the Settlement Fund is contingent upon the full amount of any requested fees, costs, or the general release payment to the Named Plaintiff being awarded.

4

### III.   Notice And Administration.

The Parties utilized a private, Court-approved third-party vendor, American Legal Claim Services, LLC ("ALCS") to notify the Settlement Class of the settlement and to provide settlement administration services. The Parties agreed that the expense of providing notice to the Settlement Class, providing the notices required under the Class Action Fairness Act, and administering the settlement will be paid from the Settlement Fund. On November 17, 2021, the Settlement Administrator mailed the required notices under the Class Action Fairness Act. (Declaration of Keith Salhab, ¶¶ 5-9.)

Extensive efforts were made by the Settlement Administrator to ensure notice reached the maximum number of class members possible, including multiple re-mailings after address searches. (Declaration of Keith Salhab ("Salhab Dec."), ¶¶ 5-9). The Notices informed Settlement Class members of: (1) a summary of the lawsuit and an overview of the nature of the claims; (2) the definition of the Settlement Class certified by the Court; (3) a clear description of the material terms of the Settlement; (4) an explanation of the claims being released; (5) an explanation of Settlement Class Members' rights; (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the final approval hearing; (8) the internet address for the settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; and, (9)

5

identification of Class Counsel and information regarding the compensation that they would seek pursuant to the Settlement Agreement.

The Settlement website provided Settlement Class Members with access to the following documents: (i) the Long Form of Class Notice which explained the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class Settlement Agreement and Release, with exhibits; (vi) Joint Motion for Preliminary Approval of Class Action Settlement, with exhibits; and (vii) Preliminary Approval Order. The Long Form of Notice included a set of Frequently Asked Questions ("FAQs") and answers about the Settlement. ALCS also set up a toll-free telephone support line that Settlement Class Members could call to obtain additional information. Thus, Notice to the Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval. Not only that, it is estimated that 96.10% of Settlement Class Members received the Class Notice. (See Salhab Dec., ¶ 9). These extensive efforts to provide notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

**A.    Class Members Overwhelmingly Support the Settlement.**

The Settlement was supported by the Settlement Class. The deadline for exclusions and objections was January 16, 2022. The Settlement Class Members overwhelmingly accepted the Settlement. Importantly, none objected. (See Salhab Dec., ¶ 11). Additionally, only one request for exclusion was received. (See Salhab Dec., ¶ 10). Combining the high percentage of the class members receiving notice,

6

along with the complete absence of any objections and only one exclusion, further demonstrates the positive reaction to the Settlement by class members.

## C. Attorneys' Fees and Expenses, and General Release by Named Plaintiff.

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third (33%) of the maximum gross Settlement Fund as attorneys' fees, plus reasonable costs. Plaintiff has filed a separate fee petition. (ECF No. 31). Defendant does not to oppose the amount of fees and costs sought by Class Counsel up to the above identified amount. Also, Named Plaintiff is entitled to seek a Payment from the Settlement Fund of a general release payment to the Named Plaintiff approved by the Court of $7,500.00 for all other employment and any other claims he is releasing against the Released Parties, which Defendant also does not oppose.

## IV. The Proposed Class Has Been Certified by the Court.

### A. The Certified Class.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (See ECF No. 30). Since the Court's Preliminary Approval Order, no objections addressing class certification have been made. Thus, Plaintiff respectfully submits there is no reason to re-visit the Court's prior ruling on certification.

## B. The Class Notice Met the Requirements of Rule 23(c).

Federal Rule of Civil Procedure 23(c)(2)(B) requires that class notice clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)3.

The Court-approved Notice satisfies each of these requirements. As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)). Here, the Settlement Administrator exceeded these requirements.

## C. The Settlement is Fair, Reasonable, and Adequate.

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable;

8

(4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters,* 2012 U.S. Dist. LEXIS 99129, at *33 (citing In *re CP Ships Ltd. Secs. Litig.,* 578 F.3d 1306, 1317–18 (11th Cir. 2009)). "[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-CV-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), report and recommendation adopted, No. 813CV03072EAKTBM, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017).

**1. The Likelihood of Success at Trial Confirms Settlement is Appropriate.**

Continuing the FCRA Litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses Defendant intended to assert if the case was not settled. From Plaintiff's perspective, there was a risk the Court would accept one or more of Defendant's arguments on a key point and dismiss the case, grant summary judgment, or refuse to certify the Class.

Plaintiff's success on any of these aspects in motions practice, let alone at trial, was not guaranteed. And, of course, Plaintiff still faced the uphill battle of proving willfulness at trial even if he survived dispositive motions and was

9

successful in certifying the Class. There is no certainty that continued litigation would provide a better outcome than the settlement. This factor therefore favors a finding that the Settlement is fair, reasonable, and adequate. *Youngman v. A&B Ins. & Fin., Inc.*, No. 616CV1478ORL41GJK, 2018 WL 1832992, at *7 (M.D. Fla. Mar. 22, 2018), report and recommendation adopted, No. 616CV1478ORL41GJK, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) (approving settlement where plaintiffs faced similar difficulties of proof at trial).

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.,* 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Li*tig., 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc.* (In re BGI, Inc.), 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful. Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success"). This factor supports final approval.

### 2. The Recovery in the Settlement is Substantially Above the Minimum that Class Members May Recover at Trial.

The Settlement represents a gross recovery of approximately $53 settlement per Class Member, and a $31.14 net payment, both of which are in line with settlement amounts in similar cases under the FCRA. In his Complaint, Plaintiff sought to recover under 15 U.S.C. § 1681n(a)(1)(A), (2), and (3) for himself and the other Class Members consisting of (a) statutory damages of not less than $100.00 and not more than $1,000.00; (b) punitive damages, (c) attorney's fees and costs.

However, as Section 1681n(a) of the FCRA indicates, proof of noncompliance with the technical requirements of the FCRA alone does not impose liability on a defendant. Recovery of damages under Section 1681n(a) is contingent on establishing that the Defendant willfully failed to comply with the FCRA; negligent noncompliance is not sufficient. *Safeco v. Burr*, 127 S. Ct. 2201, 2215 (2007); 15 U.S.C. § 1681n(a). And, even if liability for willful noncompliance is established as Plaintiff believes, the determination as to the size of the award is left to the discretion of the jury, which may return an award of no damages as a possible outcome. The settlement proposed in the Agreement secures a net monetary payment to each claiming Settlement Class Member in the approximate amount of $31.00. Class Counsel believes that the proposed payment to each member of the Class is a very good settlement, providing more relief to Class Members than other recently approved settlements. The district court in *Hillson v. Kelly Services Inc.*, summarized the results of such settlements as follows:

> The results counsel achieved for the class were good. The gross recovery (i.e., recovery before fees and other expenses are taken from the fund) is $30.00 per Class Member (on average). This appears to be in line with the average per-class-member gross recovery in other settlements of stand-alone disclosure claims. *See Moore v. Aerotek, Inc.*, No. 2:15-CV-2701, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017) (per-capita gross recovery of $25.00 in case involving a stand-alone disclosure claim and a claim that employer did not provide a copy of consumer report), report and recommendation adopted, 2017 WL 3142403 (S.D. Ohio July 25, 2017); *Lagos v. Leland Stanford Junior Univ.*, No. 15-CV-04524-KAW, 2017 WL 1113302, at *2 n.1 (N.D. Cal. Mar. 24, 2017) (per-capita gross recovery of $26); *Lengel v. HomeAdvisor, Inc.*, No. CV 15-2198, 2017 WL 364582, at *9 (D. Kan. Jan. 25, 2017) (citing FCRA disclosure cases with per-capita gross recoveries of $33.00, $40.00, and $44.00).

2017 WL 3446596, at *3 (E.D. Mich. Aug. 11, 2017).

The settlement proposed in the Agreement falls within the reasonable range of possible recovery for members of the settlement classes. Indeed, other settlements approved in the Middle District and beyond support this settlement.

**Middle District of Florida FCRA Settlement Chart**

| Case | Judge | Date | Class Size Estimate | Per Class Member |
|---|---|---|---|---|
| *Gorman v. Whelan Event Staffing Services, Inc,*, 8:20-cv-02275-CEH-AEP (M.D. Fla.) | Judge Honeywell | Nov. 21, 2021 | 29,202 | $25 gross |
| *Harake v. Trace Staffing, Inc.*, 8:19-cv-00243-CEH-CPT (M.D. Fla.) | Judge Honeywell | July 30, 2020 | 8,700 | $33 gross |

12

| Case | Judge | Date | Class Size Estimate | Per Class Member |
|---|---|---|---|---|
| *Twardosky v. Waste Management, Inc. of Florida, et al* 8:19-cv-02467-CEH-TGW (M.D. Fla.) | Judge Honeywell | June 28, 2021 | 29,295 | $31.50 gross |
| *Fosbrink v. Area Wide Protective,* 8:17-cv-1154 (M.D. Fla.) | Judge Moody | Jan. 22, 2019 | 22,000 | $39 gross |
| *Speer v. Whole Food Mkt. Grp., Inc.,* 8:14-CV-3035-T-26TBM (M.D. Fla.) | Judge Lazzara | Jan. 1, 2016 | 20,000 | $40 gross |

Beyond similar cases approved by District Court, balancing the risk that liability cannot be established against Defendant for willful violations of the disclosure and authorization provisions of the FCRA against the range of possible recovery of damages also supports settlement. Thus, this factor cuts sharply in favor of final approval by this Honorable Court of the Parties' settlement.

**3. Continued Litigation will be Complex, Expensive and Resource-Consuming**.

There is an inherent and substantial expense to continued litigation. If a settlement had not been reached, it is likely that both Plaintiff and Defendant would have filed summary judgment motions. If Plaintiff were to prevail, the action would have proceeded to trial on damages, with the significant expense and use of

13

resources that accompanies trial preparation. Defendant would likely seek interlocutory review of the class certification decision, requiring additional time and briefing. If Defendant were to prevail on a case dispositive motion, Plaintiff most likely would appeal. Therefore, under any scenario, Class Members would be deprived of any relief for a significant length of time.

Class and Defense Counsel are experienced class action litigators, who reached this Settlement with the assistance of an experienced class action mediator. The Parties exchanged and reviewed hundreds of pages of documents and otherwise had sufficient information in their possession to evaluate their respective positions. Both sides strongly recommend that the Court approve the Settlement. *Pierre-Val*, 2015 U.S. Dist. LEXIS at \*2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement . . . counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

Based on these circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. This factor also weighs in favor of final approval by the Court.

### 4. There is No Opposition to Any Aspect of the Settlement.

As noted above, nearly all Class Members have been notified of the Settlement. None objected. Only one asked to be excluded. Class Counsel is not surprised at a lack of objections and the overall turnout - the Settlement is a good result for the Class. The complete absence of opposition to the Settlement favors a finding that it is fair, reasonable, and adequate. *James v. JPMorgan Chase Bank*, N.A., No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval."); *Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. Lexis 88829 (S.D. Fla. 2006); see also, *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Camp v. City of Pelham*, 2014 U.S. Dist. Lexis 60496, at *11 (N.D. Ala. May 1, 2014) (the fact that no objections were received "points to the reasonableness of [the] proposed settlement and supports its approval" (citations omitted)); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (stressing that "[i]t has repeatedly been held that 'one indication of the fairness of a settlement is the lack of or small number of objections'").

Therefore, this critical factor weighs heavily in favor of final Court approval of the settlement.

### 5. The Settlement was Reached at an Appropriate Stage of Proceedings.

This factor focuses on assuring that "the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *United States ex rel. Balko*, 2017 WL 9398654, at *12. In this case, Plaintiff certainly did. The Parties engaged in extensive discovery and even conducted third-party discovery. A nationally respected mediator oversaw settlement discussions, further confirming the adequacy of the Settlement. Class counsel is satisfied the case has been thoroughly investigated. Thus, the Court should conclude that this factor also favors granting final approval. See *Poertner v. Gillette Co.*, No. 6:12- CV-803-ORL-31DA, 2014 WL 4162771, at *4 (M.D. Fla. Aug. 21, 2014), aff'd, 618 F. App'x 624 (11th Cir. 2015) (finding similar facts weighed in favor of approval of settlement); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator").

### V. Conclusion.

In sum, the Parties' class action settlement is in the best interest of the Parties and Class, was reached through arm's-length negotiations through a well-respected mediator, and is fair and reasonable to all concerned.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter a Final Order: (1) granting final approval of the Settlement Agreement between

Named Plaintiff, on his own behalf and on behalf of the Settlement Class, and Defendant; (2) certifying the above-described Settlement Class for settlement purposes; and, (3) requiring the Parties to comply with the terms and conditions in the Settlement Agreement or pursuant to the Court's Order granting Final Approval. A proposed order is attached hereto as Exhibit A.

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)**

The undersigned counsel conferred with counsel for Defendant who does not oppose this Motion.

Dated this 2nd day of February, 2022.

                Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 2nd day of February 2022, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Brandon J. Hill*
**BRANDON J. HILL**