UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE C. BENITEZ, individually
and on behalf of all others similarly
situated,

    Plaintiffs,

v.                                                   Case No: 8:21-cv-0221-KKM-TGW

FGO DELIVERS, LLC,

    Defendant.
_____

## ORDER

The Court preliminarily approved the settlement in this Fair Credit Reporting Act lawsuit between Plaintiff Jose Benitez, the class he represents, and Defendant FGO Delivers, LLC. (Doc. 30.) The Court also conditionally certified two classes for the purpose of settlement. As required in that order, the parties notified as many members of the classes about the settlement as possible over the past few months. After providing the class members an opportunity to object or opt out of the classes, the parties move for final approval of the settlement, (Doc. 32), and for attorney's fees and costs, (Doc. 31). Neither motion is opposed. After considering the record, the motions, and the arguments presented at the fairness hearing on February 16, 2022, the Court grants both motions in part.

I. BACKGROUND

Benitez filed this action in state court asserting nationwide class claims against FGO Delivers, LLC. (Doc. 32 at 2.) Benitez alleges that FGO "willfully violated the disclosure and authorization provisions of the Fair Credit Reporting Act" (FCRA). (*Id.*; Doc. 1-2.) FGO removed, (Doc. 1), and filed an answer denying Benitez's allegations and asserting affirmative defenses, (Doc. 6). After discovery, the parties held a mediation conference. (Doc. 21.) During mediation, the parties reached a settlement on the claims for the entire class of approximately 8,000 members. (Doc. 22; Doc. 32 at 3.)

The Court preliminarily approved the settlement and certified two classes for purposes of settlement on October 18, 2021. (Doc. 30.) The Court directed the parties to provide notice of the settlement to the class members and provide an opportunity to object or opt out of the classes. (*Id.*) At the completion of the notice period, the parties moved for final approval of the settlement and for attorney's fees and costs. (Doc. 31; Doc. 32.) The Court held a fairness hearing on February 16, 2022, to consider the motions. (Doc. 35.) Class members were informed of the opportunity to attend the hearing. None chose to do so.

II. LEGAL STANDARD

Rule 23(e) requires that federal courts approve settlements for class actions, as well as for a "class proposed to be certified for purposes of settlement." Fed. R. Civ. P. 23(e). A

2

court may approve the settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## III. ANALYSIS

The parties' joint motions request that the Court award attorney's fees and costs to Class Counsel and grant final approval of the settlement.

### A. Preliminary Matters

Before addressing the parties' motions, the Court must address three preliminary matters: jurisdiction, class certification, and notice.

First, the Court finds that it has subject matter jurisdiction over the claims of the members of the settlement class. It also has personal jurisdiction over Benitez, FGO, and the class members. Benitez and the class members also have standing to pursue their claims. *See* 15 U.S.C. § 1681b(b)(2)(A)(i)–(ii).

Second, the Court finds no reason to reconsider its prior order certifying the proposed classes for settlement purposes. As explained in the preliminary approval order, (Doc. 30), the proposed settlement classes satisfy the requirements of Federal Rule of Civil Procedure 23(a) and Rule 23(b)(3). The preliminary approval order certified the following classes for purposes of settlement:

> Disclosure Form Settlement Class: All individuals who were the subject of a consumer report that was procured by FGO within two years prior to the filing of the complaint up to August 17, 2021.

3

<u>Pre-Adverse Action Notice Subclass</u>: All individuals who were not approved by FGO to work based on information contained in a consumer report within two years prior to the filing of the complaint up to August 17, 2021.

The class claims arise under 15 U.S.C. § 1681b(b)(2)(A) and § 1681b(b)(3)(A). (Doc. 26-1 at 15.) As specified in the Complaint, the individual and class allegations are that FGO failed to comply with the FCRA's disclosure and authorization requirements for consumer reports procured for "employment purposes" and failed to give notice before taking adverse action against applicants based on the contents of those consumer reports. (Doc. 1-2.)

Third, the Court finds that the parties complied with the notice program set forth in the proposed settlement. Approximately 96% percent of the nearly 8,000 class members received written notice of the settlement. (Doc. 32 at 5–6.) The mailed notice, the website resources, and the telephone information line provided the members sufficient information to make an informed decision on whether to object or opt out of the settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985). It also informed them of the date of the Court's fairness hearing and their right to attend. Thus, the Court finds that the parties provided the best practical notice under the circumstances. *See* Fed. R. Civ. P. 23(c); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

4

## B. Final Settlement Approval

The parties' move for final approval of the settlement. (Doc. 32.) The deadline for class members to object or opt out passed on January 16, 2022. (*Id.* at 6.) Only one class member asked to be excluded. (*Id.*) No one objected to the settlement terms. (*Id.*) After review, the Court mostly approves of the settlement as fair, reasonable, and adequate. Accordingly, this order and the settlement (as modified by this order) bind all parties and class members who did not timely opt out.

### 1. Fairness of the Settlement Agreement

Courts must approve class action settlements. *See* Fed. R. Civ. P. 23(e). A court may approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." *Id.* To make this determination, courts consider the factors listed in Rule 23(e)(2) and the *Bennett* factors. Both sets of factors support approving the settlement.

Rule 23 provides that a court must consider four factors: (A) whether the class representative and counsel adequately represented the class; (B) whether "the proposal was negotiated at arm's length"; (C) whether the class-wide relief is adequate, considering: (i) "the costs, risks, and delay of trial and appeal"; (ii) the proposed method of distributing relief; (iii) the proposed award of attorney's fees; and (iv) "any agreement required to be

5

identified under Rule 23(e)(3); and (D) [whether] the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

Looking to *Bennett*, courts ordinarily consider: "(1) the likelihood of success at trial; (2) the range of possible recovery;" (3) whether a settlement is fair in the light of the possible range of recovery; (4) "the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

After review, the Court concludes that the proposed settlement (in most regards) is fair, reasonable, and adequate. First, the considerations in Rule 23(e)(2) point in favor of settlement approval. The class representative and Class Counsel adequately represented the class throughout this litigation and negotiated a proposal at arm's length that provides equitable and adequate relief to the class members, particularly in the light of the risks and costs of further litigation. *See* Rule 23(e)(2). Second, the *Bennett* factors point in favor of approving the settlement. *See Bennett*, 737 F.2d at 986. Most importantly, the settlement, which resulted from a formal mediation before a neutral mediator, was not a product of fraud or collusion. Instead, it is a reasonable compromise of conflicting legal positions informed by the possible range of recovery. Finally, only one class member opted out of the settlement and no class members objected. This lack of opposition "points to the

reasonableness of [the] proposed settlement and supports its approval." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (Altonaga, J.).

i. *Cy Pres* Fund

The settlement purports to create a *cy pres* fund for any unclaimed funds or remaining funds. (Doc. 26-1 at 12.) After the settlement is approved, the administrator will mail checks to each class member. Class members have sixty days to cash the checks. After the sixty-day period, the settlement directs that any unclaimed funds "will constitute a *cy pres* fund" and the administrator must donate the money to a *cy pres* recipient. (*Id.*)

Given the abiding debate over the propriety of Article III courts to permit *cy pres* distributions in the class action context, *see Frank v. Gaos*, 139 S. Ct. 1041, 1045–46 (2019); *Klier v. Elf Atochem N. Am.*, 658 F.3d 468, 480 (5th Cir. 2011) (Jones, C.J., concurring), the Court does not approve one here. At the fairness hearing, Class Counsel and counsel for FGO indicated that the *cy pres* fund was not essential to the settlement and that they did not object to a reversion of unclaimed funds to FGO, particularly in the light of the administrator's unfettered control of the funds without any interference by FGO in their disbursement.[1] Thus, the Court strikes the *cy pres* provisions from the settlement and orders that the settlement administrator return any unclaimed funds to

---

[1] At the fairness hearing, Class Counsel and counsel for FGO confirmed that FGO did not select the settlement administrator, has no relationship with the administrator, and has no control over the administrator's efforts to distribute the settlement funds to the class members.

FGO. *See Klier*, 658 F.3d at 482 (reasoning that unclaimed funds should revert to the defendant rather than pass to a *cy pres* recipient).

ii.     **Settlement Administration**

With the parties' consent, American Legal Claims Services, LLC (ALCS) accepted the role of settlement administrator. In that role, ALCS distributed the notice documents to the class members and received their responses. ALCS also maintained a website and telephone line to provide additional information on the settlement agreement. After the settlement is approved, ALCS will receive the settlement funds from FGO and distribute them to the class members and to Class Counsel. In the light of these extensive services for the benefit of the settlement class, the Court finds ALCS is entitled to its actual costs, up to $27,469.00.

Aside from the above modification and upon review of the Rule 23 and *Bennett* factors, the Court finds that the settlement is fair, adequate, and reasonable. It also advances the strong public policy in "favor[ of] the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Accordingly, the Court approves the settlement.[2]

---

[2] "As a general rule, this Court does not retain jurisdiction to enforce the terms of any settlement agreement. Moreover, the parties did not move the Court for an order retaining jurisdiction and did not provide the Court with any factual or legal basis for the Court to [do so]." *Goldsby v. Renosol Seating, LLC*, 294 F.R.D. 649, 654 (S.D. Ala. 2013) (DuBose, J.).

### C. Attorney's Fees and Costs and Class Representative Awards

In conjunction with the settlement, the parties request an award of attorney's fees and costs for Class Counsel, and an additional payment for Benitez as the class representative.

#### 1. Class Representative Award

The proposed settlement agreement provides for each class member to receive approximately $31.14. There is one exception: Jose Benitez. Benitez, the named Plaintiff, is to receive an additional payment of approximately $7,500.00. The parties claim that Benitez is entitled to a larger payment because he executed a broader release than that of the other class members. (Doc. 32 at 4.) While it is true that there are some differences of language between the general release and Benitez's release, the Court is not convinced that Benitez gives up anything of value when he surrenders claims "from the beginning of the world" or "unknown" and "unsuspected claims." (Doc. 26-1 at 15–16.) Even if he does, the Court is not convinced that it is over 240 times as valuable as the release of the general class members.

At the fairness hearing, Class Counsel suggested that Benitez, as a former FGO employee, may be surrendering additional employment-related claims, such as discrimination or retaliation. But Class Counsel and counsel for FGO also admitted that other class members are former FGO employees and may have similar undiscovered

9

employment claims. Thus, Benitez is not distinguishable from these other class members and counsel offered no other plausible distinction between the two.[3]

Without an adequate explanation, the additional $7,500.00 payment to Benitez appears to be a salary or an incentive award masquerading under another name. At times, Class Counsel has also found a distinction hard to draw, referring to the additional payment as a "Class Representative service award." (Doc. 31 at 21.) The problem, of course, is that this Court cannot approve incentive awards, salaries, or bounties to a named plaintiff. *See Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1257–59 (11th Cir. 2020) (holding that a "plaintiff suing on behalf of a class . . . cannot be paid a salary or be reimbursed for his personal expenses," commonly referred to as "incentive awards"). Accordingly, the Court denies any additional payment to Benitez and likewise strikes Benitez's general release that purports to give up more than the average class member from the settlement. Benitez releases any FCRA claims against FGO to the same extent as other class members. Additionally—and as provided in the settlement—the $7,500 amount "will be paid out on a pro rata basis to the Settlement Class Members." (Doc. 26-1 at 7.)

---

[3] At one point during the fairness hearing, counsel for FGO offered up that Benitez has been more "involved" in the case compared to the other class members, which of course is the very definition of an incentive award. *See Chieftan Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case.").

## 2. Attorney's Fees

Courts within the Eleventh Circuit evaluate requests for attorney's fees for class settlement using a common fund approach. Courts ordinarily approve fees that "fall between 20% to 30% of the fund." *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Twenty-five percent is the "bench mark" that may be adjusted to account for "the individual circumstances of each case." *Id.* at 775.

When the fee exceeds the benchmark, Courts must apply the *Johnson* factors. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). The *Johnson* factors include: (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) whether the case precluded the attorney from other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the results obtained; (9) the attorney's experience, reputation, and ability; (10) the undesirability of the case; (11) the nature and length of the relationship with the client; and (12) awards in similar cases. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242–43 (11th Cir. 2011).

Separate from the settlement approval, Class Counsel moves for attorney's fees and costs. (Doc. 31.) The amount of attorney's fees was negotiated separately from the class settlement. (Doc. 29 at 5.) And the settlement agreement is not contingent on approval of

11

the amount of attorney's fees. (Doc. 32 at 4.) Out of the common fund of $430,000.00 that Class Counsel secured in the settlement, Counsel requests attorney's fees of $143,333.33, or approximately 33% of the total.

The Court finds no reason to depart from the 25% benchmark in this case. A fee of 25% of the total settlement is reasonable for the reasons stated in the motion. (Doc. 31 at 14–25.) But those reasons do not support a higher fee. Most importantly, Class Counsel's motion does not argue that this case was more difficult, time consuming, or labor intensive than other FCRA class actions. Nor did Class Counsel make that argument during the fairness hearing. And while the Court acknowledges that Class Counsel are highly experienced in FCRA class action litigation, the Court also expects that Counsel's experience resulted in considerable efficiency savings. Thus, Class Counsel's primary burdens in prosecuting this case are the ordinary ones of class action litigation—burdens that the ordinary 25% fee amply compensates. *See Faught*, 668 F.3d at 1243 (explaining that "25% is generally recognized as a reasonable fee award in common fund cases"). In sum, an award of 25% of the common fund "fairly and adequately compensates" Class Counsel while protecting the interests of class members. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1337 (S.D. Fla. 2001) (Middlebrooks, J.) (reducing requested fees from 30% to 25%). Class Counsel's motion for attorney's fees is granted in part. (Doc. 31.) Class Counsel is awarded 25% of the total settlement fund, or $107,500.00.

### 3. Costs

In addition to attorney's fees, Class Counsel requests $2,694.15 in litigation costs. (Doc. 31.) After review, the Court finds that the costs incurred—primarily mediation expenses, service of process costs, and filing fees, (Doc. 31-2)—were reasonable and necessary to the case. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298–99 (11th Cir. 1999). Class Counsel's motion for costs is granted. (Doc. 31.)

## IV. CONCLUSION

Upon review of the record, the motions, and the argument presented at the hearing and with the above modifications, the Court concludes that the settlement is fair, adequate, and reasonable. The Court also concludes that attorney's fees and costs are warranted in this case, but denies the class representative award.

Accordingly, the following is **ORDERED:**

1. Plaintiff's Motion for Final Approval of the Class Settlement is **GRANTED in part** and **DENIED in part**. (Doc. 32.) The Court strikes the *cy pres* provisions from the settlement and orders that any unclaimed funds shall revert to FGO. The settlement is otherwise approved and the parties are directed to implement the settlement according to its terms and conditions.

2. Plaintiff's Motion for Attorney's Fees and Costs is **GRANTED in part** and **DENIED in part**. (Doc. 31.) The Court awards Class Counsel $107,500.00

13

        in attorney's fees and $2,694.15 in costs, but Benitez is not entitled to a general release payment.

3.    The Court directs the Clerk to **ENTER** judgment in accord with this order and the settlement (Doc. 26-1), dismissing all claims with prejudice, and without costs to any party, except as provided in the settlement agreement. The Clerk is further directed to **TERMINATE** any pending motions or deadlines, and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on February 17, 2022.

*[Signature]*
Kathryn Kimball Mizelle
United States District Judge